UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

GULFSTREAM INTERNATIONAL
GROUP, INC., *et al.,*[1]

Case No. 10-44131-BKC-JKO
Chapter 11 Cases
Joint Administration Pending

Debtors.

_____/

## DEBTORS' APPLICATION FOR APPROVAL, ON AN INTERIM AND FINAL BASIS, OF EMPLOYMENT OF JETSTREAM AVIATION CAPITAL, LLC AND JETSTREAM AVIATION MANAGEMENT, LLC, AS FINANCIAL ADVISORS TO THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE

Gulfstream International Group, Inc. ("GIG"), Gulfstream International Airlines, Inc.

("GIA"), Gulfstream Training Academy, Inc. ("GTA"), GIA Holdings Corp., Inc. ("GIA

Holdings"), and Gulfstream Connection, Inc. ("GCI") (each, a "Debtor," and, collectively, the

"Debtors"), by and through undersigned counsel, pursuant to 11 U.S.C. § 327(a), file this

*Debtors' Application for Approval, on an Interim and Final Basis, of Employment of Jetstream*

*Aviation Capital, LLC and Jetstream Aviation Management, LLC,, as Financial Advisors to the*

*Debtors, Nunc Pro Tunc to the Petition Date* (the "Application"), seeking approval on an interim

and final basis of the employment of Jetstream Aviation Capital, LLC and Jetstream Aviation

Management, LLC (collectively, "JAM") to provide financial advisory services to the Debtors

during their Chapter 11 cases. In support of the Application, the Debtors rely on the *Declaration*

*of Stuart A. Klaskin in Support of the Debtors' Application for Approval of the Employment of*

---

[1] The address of each of the Debtors is 3201 Griffin Road, 4th Floor, Fort Lauderdale, FL 33312; and the last four digits of the taxpayer identification number of each of the Debtors follows in parenthesis: (i) Gulfstream International Group, Inc. (3956); (ii) Gulfstream International Airlines, Inc. (1720); (iii) Gulfstream Training Academy, Inc. (5843); (iv) GIA Holdings Corp., Inc. (9548); and (v) Gulfstream Connection, Inc. (1208).

*Jetstream Aviation Capital, LLC and Jetstream Aviation Management, LLC, as Financial Advisors to the Debtors, Nunc Pro Tunc to the Petition Date* (the "Klaskin Declaration") attached hereto as **Exhibit "A."** In support of the Application, the Debtors also rely upon the *Declaration in Support of First Day Pleadings* (the "First Day Declaration") filed on the Petition Date (as defined below), and respectfully represent as follows:

## I.    Jurisdiction and Venue

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory predicates for the relief sought herein are Sections 105(a) and 327(a) of the Bankruptcy Code.

## II.    Background

4.    On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11, title 11, United States Code, 11 U.S.C. § 101-1531 (the "Bankruptcy Code").

5.    The Debtors are operating their businesses and managing their affairs as debtors in possession. 11 U.S.C. §§ 1107(a) and 1108.

6.    For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the First Day Declaration.

## III.    Relief Requested and Basis Therefore

7.    The Debtors seek to employ JAM as financial advisors pursuant to the terms of that certain engagement letter dated as of November 1, 2010 (as may be amended from time to time, the "Engagement Letter"). A true and correct copy of the Engagement Letter is attached

2620410-1                                                                 2

hereto as **Exhibit "B."**    Through this Application, the Debtors seek to employ JAM as financial advisors during the pendency of these Chapter 11 cases. The requested retention by the Debtors is sought pursuant to section 327(a) of the Bankruptcy Code.

8.    The Bankruptcy Code allows a debtor, with the Court's approval, to employ one or more professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). Except as disclosed in the Klaskin Declaration, neither Stuart A. Klaskin ("Klaskin") nor JAM has any connection with the creditors or other parties in interest or their respective attorneys.  As set forth in the Klaskin Declaration, to the best knowledge of Klaskin, neither Klaskin nor JAM represents any interest adverse to the Debtors. Attached to this Application as **Exhibit "A"** is the Klaskin Declaration containing a verified statement as required under Rule 2014 of the Federal Rules of Bankruptcy Procedure and demonstrating that under these circumstances Klaskin and JAM are disinterested as required by Section 327(a) of the Bankruptcy Code.

9.    JAM will apply for compensation and reimbursement of costs, pursuant to Sections 330 and 331 of the Bankruptcy Code, as set forth in paragraph 12 below, for services rendered and costs incurred on behalf of the Debtors.

A.    **Services to be Provided**

10.    As per the terms contained in the Engagement Letter, JAM has agreed to provide financial advisory services including, but not limited to, performing an evaluation of the particulars of a financial restructuring plan organized by the Debtors, as well as provide advisory support to the Debtors and their potential lenders and/or acquirers to structure a transaction which facilitates the Debtors' long-term viability.  Working collaboratively with the Debtors and

2620410-1                                      3

the Debtors' other professionals, JAM will assist the Debtors in evaluating and implementing strategic and tactical options through the restructuring process.

11.    In addition, to the extent that the Debtors request additional advisory services, JAM will amend the Engagement Letter accordingly and seek approval of the Court. JAM may provide additional personnel as the Debtors may request to assist in performing the services described above and such other services as may be agreed to, on such terms and conditions and for such compensation as the Debtors and JAM shall agree.

### B.    Terms of Retention

12.    The terms of JAM's proposed compensation are set forth in the Engagement Letter. Specifically, JAM will be compensated as follows:

      (a)    Month of November 2010 - $50,000.00; and

      (b)    December 1, 2010 through February 1, 2011 - $30,000.00 per month.

For any additional services beyond the scope of the services set forth above and in the Engagement Letter will be $300.00 per hour, and will be subject to the approval of the Court after notice and hearing.    Pursuant to the Engagement Letter, the Debtors have paid JAM, and JAM is presently holding in trust, the sum of $50,000.00 for the services to be rendered for the month of November 2010, as set forth above.

13.    In addition to compensation for services rendered by JAM, JAM will seek reimbursement for reasonable out-of-pocket expenses in connection with this assignment, such as travel, communication, research materials, and other miscellaneous charges incurred by JAM on the Debtors' behalf. Pursuant to the terms of the Engagement Letter, JAM will not incur such

4

expenses (in aggregate) of more than two thousand five hundred dollars ($2,500.00), without the Debtors' prior approval.

14.    In the Engagement Letter, the Debtors agree to indemnify and hold harmless, JAM (including its affiliates, and the respective directors, officers, shareholders, agents and employees of JAM and its affiliates) (collectively, the "Indemnified Persons") from and against any and all claims, actions, suits, investigations and proceedings, any and all damages and liabilities and any and all costs, expenses and disbursements, whether in giving testimony, furnishing documents in response to a subpoena or otherwise, including, without limitation,  the costs, expenses and disbursements of investigating, preparing or defending any such claim, action, suit, investigation or proceeding, as and when incurred by an Indemnified Person (including those incurred by any Indemnified Person in any action, suit or proceeding between the Debtors and the Indemnified Person), which are related to or arise out of (i) any actions taken or omitted to be taken (including any untrue statements made, or any statements omitted to be made, to JAM as the consultant or advisor) by the Debtors or (ii) any actions taken or omitted to be taken by any Indemnified Person in connection with the engagement of JAM, provided, however, that such indemnity agreement shall not apply to any portion of any such claim, action, suit, investigation or proceeding to the extent that it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence, bad faith or willful misconduct of JAM.  The indemnification provisions contained in the Engagement Letter shall survive completion of the engagement.

## C.    JAM's Qualifications

15.    JAM and its professionals and employees have a wealth of experience in providing financial advisory services to distressed organizations, including those operating as

2620410-1                                                      5

Chapter 11 debtors-in-possession. Specifically, JAM has approximately fourteen (14) years of experience in providing financial advisory services to companies involved in the airline and aviation-related business who have experienced financial difficulties. JAM recently has provided financial advisory services in a number of large and mid-size bankruptcy restructurings, and attached hereto as **Composite Exhibit "C"** is a list of JAM's representative airline and aviation-related restructuring experience, as well as the Curriculum Vitae of Stuart A. Klaskin.

16. Mr. Klaskin will lead the engagement for JAM. Mr. Klaskin is well-qualified to do so, having over fourteen (14) years of experience in providing financial advisory services to companies, including those in Chapter 11 bankruptcy proceedings. He is accomplished in financial restructurings, operational improvement plans and cash management.

17. The Debtors submit that the employment of JAM under the terms and conditions contained in the Engagement Letter will benefit the Debtors' estates and creditors.

18. The Debtors seek entry of an order, on an interim basis, approving the employment of JAM, and scheduling a final hearing to consider the Application.

19. The Debtors request that the retention of JAM be approved *nunc pro tunc* to the Petition Date.

**WHEREFORE,** the Debtors respectfully request the entry of an order in the form annexed hereto as **Exhibit "D"** (i) granting this Application, (ii) authorizing the Debtors to engage JAM, on an interim basis, to provide financial advisory services during the pendency of these Chapter 11 cases upon the terms and conditions contained in the Engagement Letter; (iii) scheduling a final hearing to consider the Application; and (iv) granting such other and further relief as may be just and proper.

2620410-1                                          6

**DATED**:  November 3, 2010.

GULFSTREAM INTERNATIONAL GROUP, INC.
3201 Griffin Road, 4th Floor
Fort Lauderdale, FL 33312

By: _____

     David F. Hackett, President and Chief
     Executive Officer

GULFSTREAM INTERNATIONAL AIRLINES, INC.
3201 Griffin Road, 4th Floor
Fort Lauderdale, FL 33312

By: _____

     David F. Hackett, President and Chief
     Executive Officer

GULFSTREAM TRAINING ACADEMY, INC.
3201 Griffin Road, 4th Floor
Fort Lauderdale, FL 33312

By: _____

     David F. Hackett, President and Chief
     Executive Officer

GIA HOLDINGS CORP., INC.
3201 Griffin Road, 4th Floor
Fort Lauderdale, FL 33312

By: _____

     David F. Hackett, President and Chief
     Executive Officer

GULFSTREAM CONNECTION, INC.
3201 Griffin Road, 4th Floor
Fort Lauderdale, FL 33312

By: _____

     Peter E. Taggart, President

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1.

Dated: November 4, 2010.

BERGER SINGERMAN, P.A.
*Proposed Counsel for Debtors in Possession*
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL 33301
Telephone: (954) 525-9900
Facsimile: (954) 523-2782

By: *  /s/  Brian K. Gart*
Brian K. Gart
Florida Bar No. 381152
bgart@bergersingerman.com
Douglas A. Bates
Florida Bar No. 791431
dbates@bergersingerman.com

# EXHIBIT "A"

## (Declaration of Stuart A. Klaskin)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                          Chapter 11 Cases

GULFSTREAM INTERNATIONAL                        Case No.
GROUP, INC., *et al.,*[1]                       Joint Administration Pending

          Debtors.
_____/

**DECLARATION OF STUART A. KLASKIN IN SUPPORT OF THE DEBTORS'
APPLICATION FOR APPROVAL, ON AN INTERIM AND FINAL BASIS, OF
EMPLOYMENT OF JETSTREAM AVIATION CAPITAL, LLC AND JETSTREAM
AVIATION MANAGEMENT, LLC, AS FINANCIAL ADVISORS TO
THE DEBTORS, NUNC PRO TUNC TO THE PETITION DATE**

1.      I am Stuart A. Klaskin. I am a partner with Jetstream Aviation Capital, LLC and

Jetstream Aviation Management, LLC (collectively, "JAM"), which are professional services

firms engaged in the business of providing financial advisory and related professional consulting

services.  JAM specializes in, among other things, providing financial advisory services to

financially troubled companies in the airline and aviation industries.  JAM's corporate

headquarters are located at 2601 South Bayshore Drive, Suite 630, Miami, FL 33133.  I am

familiar with the matters set forth herein and make this Declaration in support of the *Debtors'*

*Application for Approval, on an Interim and Final Basis, of Employment of Jetstream Aviation*

*Capital, LLC and Jetstream Aviation Management, LLC  Nunc Pro Tunc to the Petition Date*

---

[1] The address of each of the Debtors is 3201 Griffin Road, 4th Floor, Fort Lauderdale, FL 33312; and the
last four digits of the taxpayer identification number of each of the Debtors follows in parenthesis:  (i)
Gulfstream International Group, Inc. (3956); (ii) Gulfstream International Airlines, Inc. (1720); (iii)
Gulfstream Training Academy, Inc. (5843); (iv) GIA Holdings Corp., Inc. (9548); and (v) Gulfstream
Connection, Inc. (1208).

(the "Application"). Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called as a witness, I would testify competently thereto.[2]

2.      To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, other than in connection with these Chapter 11 cases, neither I, nor JAM, nor any of its partners, principals, employees, agents or affiliates, have any connection with the Debtors, their creditors, the United States Trustee, or any other party with an actual or potential interest in these Chapter 11 cases, or their respective attorneys or accountants, except as set forth below:

(a)      JAM is not employed by, and has not been employed by, any entity other than the Debtors in matters related to these Chapter 11 cases.

(b)      From time to time, JAM has provided services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties adverse to the Debtors in matters wholly unrelated to these Chapter 11 cases. As described below, JAM has undertaken a detailed search to determine, and to disclose, whether it is providing or has provided, services to any significant creditor, equity security holder, insider or other party-in-interest in such unrelated matters.

(c)      JAM provides services in connection with numerous cases, proceedings and transactions unrelated to these Chapter 11 cases. Those unrelated matters involve numerous attorneys, financial advisors and creditors, some of which may be claimants or parties with actual or potential interests in these Chapter 11 cases, or may represent such parties.

(d)      JAM's personnel may have business associations with certain creditors of the Debtors unrelated to these Chapter 11 cases. In addition, in the ordinary course of its business, JAM may engage counsel or other professionals in unrelated matters who now represent, or who may in the future represent, creditors or other interested parties in these Chapter 11 cases.

3.      JAM searched its client database to determine whether JAM had any relationships with the following (collectively, the "Interested Parties"):

(a)      the Debtors and their affiliates;

---

[2] Certain of the disclosures herein relate to matters within the knowledge of other professionals at JAM and are based on information provided by them.

    (b)     the Debtors' current members, partners (general and limited), directors and officers (to the extent applicable) and certain of their most significant business affiliations, as provided to JAM by the Debtors;

    (c)     the Debtors' largest secured creditors, as provided to JAM by the Debtors;

    (d)     each of the Debtor's 20 largest unsecured creditors, as provided to JAM by the Debtors;

    (e)     each of the Debtor's creditors and interested parties, as provided to JAM by the Debtors; and

    (f)     various other potential parties-in-interest, as identified by the Debtors.

4.     Based on that search, JAM represents that, to the best of its knowledge, JAM knows of no fact or situation that would represent a conflict of interest for JAM with regard to the Debtors. JAM, however, wishes to disclose the following:

    (a)     Commutair is listed as a creditor or interested party of the Debtors. JAM has been active in discussions with Commutair since approximately October, 2009, regarding a potential aircraft leasing transaction, which is wholly unrelated to the instant bankruptcy cases.

5.     JAM submits that it holds no adverse interest as to the matters for which it has been employed by the Debtors. JAM submits that there are no simultaneous or prospective engagements existing, including that on behalf of the Debtors, which would constitute a conflict or adverse interest as to the matters for which it has been employed by the Debtors, nor would JAM staff such part-time temporary staff on any future matter that would constitute a conflict or adverse interest to these matters.

6.     JAM consists of advisors and crisis managers providing services and advice specifically in the areas of restructuring and distressed debt.  As a result, JAM has represented and may in the future represent certain Interested Parties in matters wholly unrelated to these Chapter 11 cases, either individually or as part of representation of a committee of creditors or interest holders.

7.    JAM is a "disinterested person" as that term is defined in section 101(14), as modified by section 1107(b) of the Bankruptcy Code, given that, to the best of my information and belief, JAM:

      a.    is not a creditor, an equity security holder, or an insider of the Debtors;

      b.    is not and was not, within two years before the commencement of these Chapter 11 cases, a director, officer or employee of the Debtors; and

      c.    does not have an interest materially adverse to the interests of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or for any other reason.

8.    According to JAM's records, other than the $50,000.00 lump sum payment paid by the Debtors to JAM in connection with this engagement, as set forth in the Application and Engagement Letter, JAM has received no other payments from the Debtors during the 90 day period prior to the date of commencement of these Chapter 11 cases.  As set forth in the Application, the $50,000.00 lump sum payment paid to JAM is currently being held in JAM's trust account.

9.    Despite the efforts described above to identify and disclose JAM's connections with parties in interest in these Chapter 11 cases, JAM is unable to state with certainty that every client relationship or other connection has been disclosed.  In that regard, if JAM discovers additional information that requires disclosure, JAM will file a supplemental disclosure with the Court.

10.    JAM reserves the right to supplement this Declaration in the event that JAM discovers any facts bearing on matters described in this Declaration regarding JAM's employment by the Debtors.

11.    This concludes my declaration.

## 28 U.S.C § 1746 Declaration

I declare under penalty of perjury that the foregoing is true and correct. Executed on

November 2, 2010.

Stuart A. Klaskin

## EXHIBIT "B"

**(Engagement Letter)**



November 1, 2010

David Hackett
Gulfstream International Airlines, Inc.
3201 Griffin Road
4th Floor
Dania Beach, Florida 33312

RE:    Financial Advisory Services

Dear Mr. Hackett:

Thank you for thinking of Jetstream Aviation Capital and its affiliate, Jetstream Aviation Management, LLC ("JAM", "we", "our" or "us") with regard to your requirement for financial advisory services in conjunction with your contemplated financial restructuring.

## Project Description

You have asked us to perform an evaluation of the particulars of a financial restructuring plan organized by Gulfstream International Airlines ("GIA", "you" "Client" or the "Company") which contemplates a judicially-supervised reorganization within which is anticipated to commence during the month of November 2010. In addition, you have asked us to provide advisory support to the Company and its potential lenders and/or acquirers to structure a transaction which facilitates the Company's long-term viability.

We anticipate our involvement in this engagement to require a minimum of four (4) months, commencing immediately and continuing through the end of February 2011.

## Professional Fees

Our Professional Services Fees for this project are as follows:

1.    Month of November 2010 - $50,000.00
2.    December 2010 to February 2011 - $30,000.00 per month

## Additional Services

We will be available throughout all phases of a proposed restructuring transaction at your request to provide advice and direction for the transaction. Our Professional Fees for any services performed which go beyond the scope of the above Project Description will be three hundred dollars ($300.00) per hour.

## Engagement Details

Your execution of this letter acknowledges that you have agreed to retain JAM as an independent contractor consultant to perform the above services in accordance with the terms and conditions indicated herein.

## 1. Services

During the term of this Agreement, JAM will provide you with the services specified above. JAM will be pleased to consider and may perform additional or alternative services at the Client's written request, but only if and to the extent JAM agrees in writing to do so.

You acknowledge that JAM and its affiliates are in the business of providing advisory and consulting services for hire. The performance by JAM of services for you as contemplated in this Agreement shall

Mr. David Hackett
November 1, 2010
Page 2 of 4

not (and nothing in this letter Agreement shall be construed to) limit or restrict JAM in performing the same or similar services for others or otherwise from conducting its business.

## 2. Nature of Relationship

JAM will perform its services hereunder as an independent contractor and not as an agent, employee or affiliate of yours. Any duties of JAM arising out of its engagement hereunder are owed solely to you.

## 3. Compensation

You agree to pay JAM as fees the amounts specified above at the times and in the manner specified in this Agreement. In addition, you agree to reimburse JAM for all project-related expenses, which may include travel, communication, research materials, and other miscellaneous charges incurred by JAM on the your behalf. We will not incur such expenses (in aggregate) of more than two thousand five hundred dollars ($2,500.00) without your prior approval.

You will be solely responsible for payment of, and providing documentation for, withholdings or levies of any kind which may be applicable to JAM's invoices to you, including without limitation VAT taxes and excise taxes. JAM will be entitled to receive full payment of its invoices, in currency of the United States and within the United States, without any deduction, offset or withholding of any nature whatsoever. In the event all or any part of this provision is unenforceable for any reason, with the effect that such a deduction, offset or withholding is claimed or determined to be compulsory, JAM will be entitled to retroactively adjust its invoices so that it will receive net proceeds of payment, after any such deduction, offset or withholding, equal to the amounts stated in its original invoices.

## 4. Billing

JAM will provide you with an invoice for the first payment amount prior to the commencement of work. We will then provide you with an invoice for any remaining payments and expenses due from time to time. In each case payment is due upon receipt of an invoice.

In the event JAM does not receive payment of any invoice within 30 days after delivery of such invoice to the Client, JAM may require you to pay late charges at the rate of one and one-half percent (1.5%) per month on the overdue balance. You will reimburse JAM for all expenses (including reasonable attorneys' fees, charges and disbursements) incurred in enforcing this Agreement or collecting overdue invoices.

## 5. Confidentiality

JAM acknowledges its responsibility, both during and after the term of its engagement hereunder, to use all reasonable efforts to preserve the confidentiality of proprietary or confidential information or data developed by JAM on your behalf or disclosed by you to JAM. JAM's obligation under this Section 5 will not apply to information that (i) is or becomes generally available to the public (other than as a result of disclosure by JAM), (ii) was available to JAM on a non-confidential basis prior to its disclosure to us, (iii) you agree may be disclosed or (v) JAM is requested pursuant to, or required by, law, regulation, legal process or regulatory authority to disclose.

## 6. Disclaimer and Hold Harmless

A – Disclaimer

You acknowledge that JAM's services, work and analysis are dependent upon information furnished by you or that is otherwise publicly available, worldwide and local economic conditions, market assumptions and perceptions, and numerous economic assumptions. JAM may rely upon such information without independent verification of the accuracy, completeness or truth of such information. JAM disclaims all warranties of any kind, express or implied, howsoever arising, in contract or tort, by law or otherwise, with respect to any service, information or activity performed or provided by JAM. You acknowledge that JAM

Mr. David Hackett
November 1, 2010
Page 3 of 4

will have no liability or responsibility for the accuracy or completeness of such information, except to the extent resulting directly from JAM's gross negligence, bad faith or willful misconduct.

B – Hold Harmless

You shall indemnify and hold harmless JAM, its affiliates, and the respective directors, officers, shareholders, agents and employees of JAM and its affiliates (collectively the "Indemnified Persons"), from and against any and all claims, actions, suits, investigations and proceedings, any and all damages and liabilities and any and all costs, expenses and disbursements, whether in giving testimony, furnishing documents in response to a subpoena or otherwise, including without limitation the costs, expenses and disbursements of investigating, preparing or defending any such claim, action, suit, investigation or proceeding, as and when incurred by an Indemnified Person (including those incurred by any Indemnified Person in any action, suite or proceeding between you and the Indemnified Person), which are related to or arise out of (i) any actions taken or omitted to be taken (including any untrue statements made, or any statements omitted to be made, to JAM as the your consultant or advisor) by you or (ii) any actions taken or omitted to be taken by any Indemnified Person in connection with your engagement of JAM, provided, however, such indemnity agreement shall not apply to any portion of any such claim, action, suit, investigation or proceeding to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence, bad faith or willful misconduct of JAM.

## 7. Governing Law

This Agreement shall be governed by and construed in accordance with the laws of the State of Florida applicable to contracts made and to be performed wholly therein and without regard to conflict of laws principles.

## 8. Miscellaneous

This Agreement is the entire agreement between the parties with respect to its subject matter, supersedes all prior agreements and understanding, both written and oral, between the parties with respect to the subject matter and cannot be waived, amended, otherwise modified or terminated except in writing executed by each party to be bound thereby.

## 11. Waivers

IN NO EVENT SHALL ANY PARTY TO THIS AGREEMENT BE LIABLE TO ANY OTHER PARTY FOR ANY CONSEQUENTIAL, PUNITIVE, INCIDENTAL OR SPECULATIVE DAMAGES (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOST PROFITS), EXCEPT THAT IF CONSEQUENTIAL, PUNITIVE, INCIDENTAL OR SPECULATIVE DAMAGES ARE AWARDED TO A THIRD PARTY, JAM SHALL BE INDEMNIFIED AGAINST SUCH DAMAGES AS PROVIDED IN SECTION 6.

THE PARTIES WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER IN ANY WAY ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT.

We are prepared to commence work upon the execution of this engagement letter and the first payment amount of the applicable professional fees paid in advance. The remaining professional fees and any expenses would be due upon invoicing during the course of this engagement.

If the above accurately describes our agreement as you understand it, please signify your acceptance by executing the agreement below.

All the best,

Mr. David Hackett
November 1, 2010
Page 4 of 4

JETSTREAM AVIATION MANAGEMENT, LLC.

Stuart A. Klaskin
Chief Executive Officer & Principal

Agreed and Accepted this ___ day of November 2010

Gulfstream International Airlines, Inc.
David Hackett
President

## EXHIBIT "C"

**(Representative Airline & Aviation-Related Restructuring Experience
and Curriculum Vitae of Stuart A. Klaskin)**



**Stuart A. Klaskin**
**Representative Airline & Aviation-Related Restructuring Experience**

| | |
|---|---|
| 2004 – 2005 | **Air Transport International**, Little Rock, Arkansas<br>Advisor to the company regarding restructuring, bankruptcy alternatives, and entity disposition. |
| 2004 | **Banc of America Business Credit**, New York, NY<br>Advisor to the senior secured lender in the Arrow Air restructuring, bankruptcy and subsequent disposition. |
| 2002 | **Miami Air International**, Miami, Florida<br>Advisor to the company regarding restructuring and bankruptcy alternatives. |
| 2002 | **Banc of America Business Credit**, New York, NY<br>Advisor to the senior secured lender in the Aviation Systems International restructuring, bankruptcy and subsequent disposition. |
| 2002 | **Banc of America Business Credit**, New York, NY<br>Advisor to the senior secured lender in the Fine Air restructuring and merger with Arrow Air. |
| 2001 | **HIG Capital**, Miami, Florida<br>Advisor to the acquirer in the Amerijet International restructuring and bankruptcy. |
| 1997 – 2002 | **Eastern Airlines Liquidating Corporation**, Miami, Florida<br>Senior advisor to the court-appointed CEO and Liquidating Officer. |
| 1997 | **Flying Boat**, Ft. Lauderdale, Florida<br>Advisor to the acquirer of the assets of Chalk's International Airlines via a 363 sale. |
| 1997 | **Maverick Airways**, Denver, Colorado<br>Advisor to the company for restructuring and bankruptcy alternatives pre-chapter 11 filing. |
| 1996 | **Air 21**, Fresno, California<br>Advisor to the debtor's Board of Directors pre- and post-Chapter 11 filing. |



### Stuart A. Klaskin

Extensive experience in all aspects of the global commercial aviation industry, including aircraft sales and leasing, scheduled and nonscheduled air carrier management, air carrier and aviation-related capital sourcing, business planning and assessment of strategic opportunities, commercial and corporate aircraft flight operations. Corporate and transactional experience including new-entrant entity formation and startup, corporate mergers and acquisitions, sale and bankruptcy workout of aviation and related entities, development of new-entrant air carriers and aviation maintenance facilities, and complex business enterprise-related turnaround management. Widely recognized media commentator and speaker on various aspects of the aviation industry. Commercial pilot with over 6,000 hours of domestic and international flight experience.

| | |
|---|---|
| July 2008-<br>Present | **Jetstream Aviation Capital**  Miami, Florida<br>*Chief Executive Officer (Shareholder)* |

Responsible for managing the start up and initial operations of this aviation consultancy and private investment partnership focused on regional airlines and turboprop aircraft leasing. Duties include market and financial strategic planning, capital sourcing, aircraft and transaction screening and due diligence, and participation in client advisory activities. Extensive transactional experience and relationships with air carriers in Canada, the Caribbean Basin, Central America, South America and the United States.

| | |
|---|---|
| January 1993 -<br>June 2008 | **KKC Aviation Consulting / Klaskin, Kushner & Company**  Miami, Florida<br>*President (Shareholder)* |

Responsible for the Strategic and Transactional Practice within this aviation consulting firm specializing in strategic, financial, and operational advisory services to the commercial aviation community, including airlines, airports, aircraft lessors and industry investors. Directly responsible for client relationship development and management of numerous consulting projects for clients including: (Investors/Lenders) 1848 Capital Partners, Bain Capital, Bank of America Business Credit, The Carlyle Group, HIG Capital, IBM Global Finance, Perot Investments, SunTrust Bank, UPS Capital Corporation, and Ziff Brothers Investments. (Lessors) International Lease Finance Corporation, GA Telesis, GECAS, VonJet Advisors.  (Airlines) AeroSur, AirTran, American Airlines, Amerijet International Airlines, Arrow Air Cargo, BAX Global, Delta Air Lines, Eastern Airlines Liquidating Corporation, JetBlue, LAB Bolivian Airlines, Miami Air International, Spirit Airlines and US Helicopter. (Airports) Greater Orlando Aviation Authority, Miami-Dade Aviation Department.

| | |
|---|---|
| October 1989-<br>December 1992 | **AeroVision Aviation Management / Tropic Aviation**  Miami, Florida<br>*General Manager (Shareholder)* |

Responsible for the development and implementation of operational strategies and daily management of operations for this diversified aviation management firm with operational divisions including corporate fixed-wing and helicopter aircraft management, air charter, aircraft sales and aviation maintenance. Significant achievements included the acquisition of an established FAA Part 135 charter air carrier and integration of that company's personnel and assets into the business operations of the parent entity, development of comprehensive marketing strategies for all operational divisions, including the successful introduction of a new business concept, outsourced corporate aircraft management, to the South Florida business community, and the development and implementation of a joint venture with an international business aircraft sales firm, which established AeroVision Aviation Management as the exclusive representative for that company throughout Latin America and the Caribbean Basin.

| | |
|---|---|
| September 1988-<br>October 1989 | **Flying and Fishing Charters**  Miami, Florida<br>*Assistant Director of Flight Operations* |

Responsibilities at this aircraft and yacht charter entity with domestic and international operations included

Stuart A. Klaskin
Page two of two

managing the integration of a new jet aircraft into the existing helicopter fleet, development of all fixed-wing aircraft operational procedures, maintenance forecasting, budgeting and contracting, flight crew training, liaison with senior administrative departments and executive staff. Worldwide aircraft operations.

| | |
|---|---|
| January 1988 - September 1988 | **Federated Department Stores** Miami, Florida<br>*Corporate Pilot* |
| October 1987 - December 1988 | **Hallmark Insurance Group** Miami, Florida<br>*Corporate Pilot* |
| January 1987 - September 1987 | **Air South Airlines** Homestead, Florida<br>*Pilot* |
| **Appointments & Honors:** | Appointed to the Miami-Dade County Aviation Department Fixed Base Operator Selection and Negotiation Committee, 2010 |
| | Elected to the Miami-Dade College Alumni Hall of Fame for significant accomplishments and contributions to global transportation, 2009. |
| | Appointed by Governor Jeb Bush to the Florida Aviation & Aerospace Alliance Blue Ribbon Panel on the Future of Aviation in the State of Florida, 2003. |
| | Appointed to the Glenn H. Curtiss Mansion Historical Restoration Committee Board of Directors, Miami Springs, Florida, 2003. |
| **Education:** | **Miami-Dade Community College** - Miami, Florida<br>Undergraduate coursework, 1986-1990 |
| | **FlightSafety International -** Wichita, Kansas and Wilmington, Delaware<br>Multiple initial and recurrent training courses, 1988 – 1992 |
| **Licenses and Certificates:** | FAA Commercial Pilot, original issuance January, 1987 |
| **Affiliations:** | Member, Aircraft Owners and Pilots Association<br>Member, Greater Miami Aviation Association<br>Member, Miami Maintenance Management Council<br>Member, Wings Club (New York) |
| **Languages:** | English (Fluent, native speaker), Spanish (Basic) |
| **Citizenship:** | United States |

## EXHIBIT "D"

### (Proposed Order)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

GULFSTREAM INTERNATIONAL
GROUP, INC., *et al.,* [1]

        Debtors.

_____/

Chapter 11 Cases
Case No.

Joint Administration Pending

## INTERIM ORDER APPROVING THE EMPLOYMENT OF JETSTREAM AVIATION CAPITAL, LLC AND JETSTREAM AVIATION MANAGEMENT, LLC, AS FINANCIAL ADVISORS TO THE DEBTORS, *NUNC PRO TUNC* <u>TO THE PETITION DATE</u>

**THIS MATTER** came before the Court on the ____ day of November, 2010 at ____.m.,

in Fort Lauderdale, Florida, upon the *Debtors' Application for Approval, on an Interim and*

*Final Basis, of Employment of Jetstream Aviation Capital, LLC and Jetstream Aviation*

---

[1] The address of each of the Debtors is 3201 Griffin Road, 4th Floor, Fort Lauderdale, FL 33312; and the last four digits of the taxpayer identification number of each of the Debtors follows in parenthesis:  (i) Gulfstream International Group, Inc. (3956); (ii) Gulfstream International Airlines, Inc. (1720); (iii) Gulfstream Training Academy, Inc. (5843); (iv) GIA Holdings Corp., Inc. (9548); and (v) Gulfstream Connection, Inc. (1208).

*Management, LLC, as Financial Advisors to the Debtors, Nunc Pro Tunc to the Petition Date* (the "Application") (D.E. ____), the *Declaration in Support of First Day Pleadings* (the "First Day Declaration") (D.E. ___), and the *Declaration of Stuart A. Klaskin in Support of the Debtors' Application for Approval of the Employment of Jetstream Aviation Capital, LLC and Jetstream Aviation Management, LLC as Financial Advisors to the Debtors, Nunc Pro Tunc to the Petition Date* (the "Klaskin Declaration") attached to the Application as **Exhibit "A."** The Application requests entry of an order approving the Debtors-in-Possession's employment of Jetstream Aviation Capital, LLC and Jetstream Aviation Management, LLC (collectively, "JAM") as financial advisors in these Chapter 11 cases. The Court has jurisdiction over the matters raised in the Application pursuant to 28 U.S.C. §§ 157 and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The Court having considered the Application and the Klaskin Declaration, having been satisfied based on the representations made in the Application and the Klaskin Declaration that (a) JAM does not hold or represent an interest adverse to the Debtors' estates and (b) JAM is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; it appearing to the Court that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; and good, adequate and sufficient cause has been shown to justify the entry of this order; and the Court having considered statements of counsel and the record; and after due deliberation and sufficient cause appearing therefor, it is

**ORDERED** that:

1.    The Application is **APPROVED** on an interim basis.

2.    The employment by the Debtors, as debtors-in-possession, of Jetstream Aviation Capital, LLC and Jetstream Aviation Management, LLC, as financial advisors, in accordance

2

3206312-1

with the terms and conditions of the Engagement Letter,[2] is **APPROVED** pursuant to 11 U.S.C.

§ 327(a), on an interim basis, pending a final hearing as set forth below.

3.      The employment of Jetstream Aviation Capital, LLC and Jetstream Aviation

Management, LLC by the Debtors shall be *nunc pro tunc* to the Petition Date

4.      Jetstream Aviation Capital, LLC and Jetstream Aviation Management, LLC shall

apply for compensation and reimbursement of expenses, pursuant to 11 U.S.C. §§ 330 and 331,

at its ordinary rates, as they may be adjusted from time to time, as set forth in the Engagement

Letter, for services rendered and costs incurred as financial advisors to the Debtors. Jetstream

Aviation Capital, LLC and Jetstream Aviation Management, LLC will apply for compensation

and reimbursement of costs.

5.      The Court shall conduct a final hearing (the "Final Hearing") on the Application

on **November            , 2010 at              .m., United States Bankruptcy Court, 299 E.**

**Broward Boulevard, Courtroom      , Fort Lauderdale, FL 33301**.

6.      This Court shall retain jurisdiction to hear and determine all matters arising from

or related to the implementation of this Order.

# # #

Submitted by:
Brian K. Gart, Esq.
Douglas A. Bates, Esq.
Berger Singerman, P.A.
350 E. Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL 33301
Tel. (954) 525-9900
Fax (954) 523-2872
bgart@bergersingerman.com
dbates@bergersingerman.com

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Motion.

Copy furnished to:
Brian K. Gart, Esq.
*(Attorney Gart is directed to serve a conformed copy of this Order upon all interested parties, and to file a Certificate of Service with the Court).*

4