UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

GULFSTREAM INTERNATIONAL
GROUP, INC., et al.[1]

        Debtors.

_____/

Chapter 11 Cases

Case No. 10-44131-JKO
(Jointly Administered)

**OBJECTION OF SHELTER ISLAND OPPORTUNITY FUND, LLC
TO DEBTORS' MOTION FOR INTERIM AND FINAL APPROVAL OF
SECURED POSTPETITION FINANCING FACILITY WITH VICTORY PARK**

Shelter Island Opportunity Fund, LLC (**"Shelter Island"**) files this Objection (the "**Objection**") to the *Debtors' Motion for Interim and Final Orders Pursuant (I) Authoring (A) Secured Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), (c)(2), (c)(3) and (d); (B) Granting Security Interests, Superpriority Liens and Claims and Adequate Protection; and (C) Use of Cash Collateral and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c)* [ECF No. 8] (the "**DIP Motion**") and, in support thereof, respectfully represents as follows:[2]

## PRELIMINARY STATEMENT

1.    This is a rare case where the Debtors are seeking authority to incur postpetition indebtedness (the "**DIP Loan**") secured by a priming lien on the Debtors' assets, all of which are already encumbered, without the consent of – and initially upon no notice to – their prepetition

---

[1]    The debtors (and the last four digits of their respective taxpayer identification numbers) are: (i) Gulfstream International Group, Inc. (3956) ("**GIG**"); (ii) Gulfstream International Airlines, Inc. (1720); (iii) Gulfstream Training Academy, Inc. (5843); (iv) GIA Holdings Corp., Inc. (9548); and (v) Gulfstream Connection, Inc. (1208) (collectively, the "**Debtors**" and, all of the Debtors other than GIG, the "**Subsidiaries**")).

[2]    Shelter Island expressly reserves the right to amend or supplement this Objection, to introduce evidence at the final hearing with respect thereto, to conduct further discovery of the Debtors, the DIP Lender (as defined below) and other third parties as it may deem necessary and appropriate, and to file additional and supplemental objections and pleadings as necessary.

secured lenders, including Shelter Island.  Shelter Island is the Debtors' largest prepetition secured lender.[3]

2.      The proposed DIP Loan should not be approved because, among other things, (i) the Debtors have failed to provide adequate protection of Shelter Island's interests in its collateral, (ii) the Debtors offer no evidence of any effort to obtain an alternative source of credit on substantially better terms, (iii) the DIP Loan is grossly overreaching on the part of the proposed DIP lender, Victory Park Capital Advisors, LLC ("**Victory Park**" or the "**DIP Lender**"), and (iv) the DIP Loan, if approved, could have a chilling effect on any potential bidders for a sale pursuant to Section 363.

3.      If the Court determines to grant some relief under the DIP Motion, however, then the DIP Loan should be frozen at the interim amount of $1.7 million, and Victory Park should be precluded from advancing any additional funds.  Given that the outcome of the Debtors' sale process – as to which no stalking horse bidder has been disclosed to date – should be determinative of the course of the final outcome of these cases, it makes no sense to increase the amount by which the Secured Lenders' liens are impaired by a priming lien if, as it now appears, a reorganization is impossible and the Secured Lenders' collateral ultimately will be liquidated.

4.      For these reasons, as more fully described below, Shelter Island respectfully requests that the Court (i) deny the DIP Motion or, (ii) if the Court determines to grant the DIP Motion, freeze the DIP Loan at the interim amount of $1.7 million and prohibit the Debtors from borrowing, and Victory Park from advancing, any additional funds under the DIP Loan.

---

[3]    Shelter Island holds a first priority lien and security interest in and to all of the Debtors' assets, properties and stock, subject and subordinate only to certain limited interests held by SAH-VUL Strategic Partners I, LLC ("**SVSP**") and Taglich Brothers, Inc. ("**Taglich**" and, collectively with Shelter Island and SVSP, the "**Secured Lenders**").

## BACKGROUND

5.      As of the petition date, the Debtors were indebted to Shelter Island in the aggregate amount of $3,752,981.67, pursuant to that certain Securities Purchase Agreement dated August 31, 2008, between Shelter Island and GIG, that certain $5,100,000 Secured Original Issue Discount Debenture entered into on September 19, 2008, and effective on August 31, 2008, as amended, and all other documents executed in connection therewith, including, without limitation, those certain Guaranties dated August 31, 2008 and made by each of the Subsidiaries in favor of Shelter Island.  The Debtors' obligations to Shelter Island are secured by a lien and security interest in and to all of the assets and properties of GIG and its Subsidiaries and all stock in the Subsidiaries, as described more fully in that certain Waiver, Consent and Intercreditor Agreement, dated August 31, 2010, among the Secured Lenders.

6.      On November 4, 2010, the Debtors filed these chapter 11 cases.  The Debtors did not advise the Secured Lenders, including Shelter Island, that they intended to file.

7.      The Debtors filed numerous first day motions, including the DIP Motion.  The DIP Motion seeks authority for the Debtors to grant to Victory Park a senior, superpriority, priming lien on the Secured Lenders' collateral, to pay certain sizeable fees to Victory Park and to reimburse "all costs" incurred by Victory Park in exchange for $1.5 million of postpetition financing on an interim basis[4] and an additional $3.5 million after final approval of the DIP Loan.  In addition, the DIP letter agreement contemplates a "Lender Sponsored Transaction," whereby Victory Park would serve as the stalking horse in a sale of the Debtors' assets or co-sponsor a plan of reorganization with the Debtors.

---

[4]    Although the DIP Loan provides for $1.5 million of interim financing, the Debtors reached an accommodation with SVSP prior to the hearing on November 5, 2010 for an additional $200,000 to be paid to SVSP as adequate protection for the Cuba Business Collateral (as defined in the DIP Motion).  The Debtors were unwilling to discuss an accommodation for Shelter Island prior to the hearing and Shelter Island prosecuted its objection to interim approval of the DIP Loan.

8.    One of the Debtors' key assets is its lease agreement with Raytheon Aircraft Credit Corporation ("**RACC**") for twenty-one (21) Beechjet 1900D airliners, which terminates by its terms on December 6, 2010, unless the Debtors exercise their purchase option thereunder. Upon information and belief, as of the filing of this Objection, the purchase option has not been exercised.

9.    Nevertheless, in the evening on Friday, November 19, 2010, the Debtors filed the *Debtors' Emergency Motion for Orders Pursuant to 11 U.S.C. §§ 105, 363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014 (A) Approving (I) Bidding Procedures, (II) Form and Manner of Sale Notices, and (III) Sale Hearing Date and (B) Authorizing and Approving (I) Sale of a Portion of or Substantially All of the Debtors' Assets Free and Clear of Certain Liens, Claims and Encumbrances, and (II) Assumption and Assignment of Executory Contracts and Unexpired Leases* [ECF No. 98] (the **"Sale Motion"**), seeking authority for the sale of their assets and approval of a very accelerated timeline in which to market and sell them.  The Sale Motion indicates that, as of the date of the Sale Motion, there is no stalking horse bidder.[5]  The proposed deadline for bids to be received by the Debtors is 12:00 noon on Wednesday, December 1, 2010, immediately prior to the hearing on the DIP Motion.  Upon information and belief, ten days later, there is still no stalking horse bidder.

## OBJECTION

10.    The Debtors intend to layer up to $5 million of secured postpetition debt over the claims and liens of Shelter Island without their consent and upon information and belief, without the consent of the other Secured Lenders.  The Debtors utterly fail in the DIP Motion to

---

[5]    The Debtors state in the Sale Motion that the $1.7 million interim DIP Loan was used to "assuage immediate liquidity crises" and allow the DIP Lender to finish its diligence prior to entering into a Lender Sponsored Transaction.  Although the DIP Loan letter agreement contemplates a Lender Sponsored Transaction by Victory Park, the Sale Motion was filed without any entity identified as a stalking horse bidder.

adequately protect the Secured Lenders' interests as required by the Bankruptcy Code and subject them to substantial risk.  As Shelter Island will demonstrate at the hearing on the DIP Motion, because the Debtors have not established that the Secured Lenders are adequately protected in the face of Victory Park's priming lien, the Court must deny the DIP Motion.  In the alternative, the DIP Loan should be frozen at $1.7 million, at least through the end of the Debtors' expedited sale process.

I.     **The DIP Motion should be denied, because the Debtors have failed to adequately protect the interests of their Secured Lenders, including Shelter Island, in contravention of section 364(d)(1)(B) of the Bankruptcy Code.**

11.     Section 364(d) of the Bankruptcy Code provides that the Court "may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if. . . there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. §364(d)(1).

12.     The debtor bears the burden of proving that it was unable to obtain such credit on a junior basis and that the existing lienholder's interest is adequately protected.  11 U.S.C. § 364(d)(1) & (2); *Desert Fire Protection v. Fontainebleau Las Vegas Holdings (In re Fontainebleau Las Vegas Holdings),* 424 B.R. 716, 748 (S.D. Fla. 2010).  The debtor's proof should be premised on facts or projections with a firm evidentiary basis.  *In re Mosello*, 195 B.R. 277, 287, 292 (Bankr. S.D.N.Y. 1996).  The Bankruptcy Code does not expressly define adequate protection, but section 361 states that it may be provided by (1) periodic cash payments; (2) additional or replacement liens; or (3) other relief resulting in the "indubitable equivalent" of the secured creditor's interest in such property.  11 U.S.C. § 361.

13.     Adequate protection is meant to ensure the prepetition lender receives the benefit of its bargain, *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985), and "should provide the

prepetition secured creditor with the same level of protection it would have had if there had not been post petition superpriority financing." *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994). The United States District Court for the Southern District of Florida recently recognized that "ensuring that a creditor receives the value for which it bargained before the debtor had filed for bankruptcy is the *raison d'être*" of adequate protection. *In re Fontainebleau*, 424 B.R. at 749 (citing *In re Swedeland*, 16 F.3d at 564).

14.    Because a priming lien "displaces liens on which creditors have relied in extending credit, a court that is asked to authorize such financing must be particularly cautious when assessing whether the creditors so displaced are adequately protected." *In re Mosello*, 195 B.R. at 289 (*citing In re First So. Sav. Assn.*, 820 F.2d 700, 710 (5th Cir. 1987)); *In re Stoney Creek Techs., LLC*, 364 B.R. 882, 889-90 (Bankr. E.D. Pa. 2007). Indeed,

> [t]he ability to prime an existing lien is extraordinary, and in addition to the requirement that the trustee be unable to otherwise obtain credit, the trustee must provide adequate protection for the interest of the holder of the existing lien… In most cases, adequate protection is provided by conditioning or limiting the borrowing in order to maintain a sufficient equity in the subject property to protect the existing lienholder.

3 Collier on Bankruptcy § 364.05 (15th ed. rev. 2002).

15.    The District Court in *Fontainebleau* emphasized the necessity of providing a prepetition secured creditor with adequate protection that is "'completely compensatory' or nearly so." 424 B.R. at 749. Whether protection is adequate depends directly on how effectively it compensates the secured creditor for the loss of value of its collateral caused by the superpriority given to the postpetition loan. *Id.* at 749-50 (citing *In re Swedeland,* 16 F.3d at 564, and *Orix Credit Alliance, Inc. v. Delta Res., Inc. (In re Delta Res., Inc.)*, 54 F.3d 722, 728 (11th Cir. 1995)). In that vein, the adequate protection offered by a debtor must not be illusory. *See Carpet Ctr. Leasing Co. v. Nalley Motor Trucks,* 991 F.2d 682, 685 (11th Cir. 1993).

16.     Thus, in order for Victory Park to be granted a priming lien on the Secured Lenders' collateral for the amount of the DIP Loan (which therefore decreases the value of the Secured Lenders' interests in the Debtors' assets by the same amount), the Debtors are required to establish that the Secured Lenders' interests in the Debtors' assets are adequately protected. This they have failed to do and, indeed, cannot do.

17.     Not only is the DIP Motion devoid of evidence supporting the requested relief but the Debtors also failed to adduce evidence in support of the motion at the interim hearing on the motion.  Using the Debtors' own figures, Shelter Island will show that the proposed Adequate Protection Liens (as defined in the DIP Motion) are insufficient and do not meet the high statutory threshold of adequate protection discussed at length by the District Court in *Fontainebleau.*

18.     After it became clear in *Fontainebleau* that the debtors were unable to reorganize, they prepared to sell their assets under section 363 of the Bankruptcy Code.  424 B.R. at 727-28. To avoid a forced liquidation, the debtors endeavored to obtain postpetition financing and, in order to entice a lender to lend on that basis against property that was fully encumbered,[6] the debtors proposed granting the DIP lender a priming lien.  *Id.* at 728.  The bankruptcy court approved the proposed financing and priming lien based on the debtors' demonstrated "immediate need" and "the necessity of getting this thing moved along to a sale," as well as the fact that a sale "clearly benefits" all creditors.  *Id.* at 730.

19.     On appeal, the District Court determined that these findings, while "establish[ing] that the DIP financing was necessary to preserve, and possibly even enhance, the value of the Debtors' assets and bring the sale to a conclusion," did "*not* support the bankruptcy court's

---

[6]    Although Fontainebleau's term lenders and statutory lienholders disputed which party held the first lien, their dispute is not relevant to the issue of adequate protection.

conclusion that the [secured lenders] were adequately protected.  To the contrary, these findings are somewhat beside the point." *Id.* at 751 (emphasis added).  Instead, when considering a priming lien, the court's "inquiry ought to have focused on compensating the [secured lenders] for the loss of value of their interests in the [collateral] *caused by the priming lien.*" *Id.* at 751-52 (citing *In re Swedeland*, 16 F.3d at 564) (emphasis in original).

20.     In the DIP Motion, the Debtors attempt to distinguish *Fontainebleau* by arguing that this case is "different," as they need to "facilitate a transaction within a very limited period of time" and "need to move quickly under the terms and conditions of the DIP Facility" or their "operations would be forced to cease."  (DIP Mot. ¶¶ 35, 36.)  The Debtors argue that since the Secured Lenders' liens are allegedly subject to recharacterization and equitable subordination,[7] the Court "should not presume based on the publicly filed documents" that the liens are valid, and accordingly, the Court need not afford them the same level of deference as liens where the Debtors have not raised a challenge.  (*Id.* ¶¶ 32, 35.)  Finally, the Debtors contend that they will demonstrate, using their hybrid valuation methodology, that the Secured Lenders are adequately protected by the replacement liens the Debtors propose to grant them.  (*Id.* ¶¶ 36-41.)

21.     With respect to the amount of the Secured Lenders' liens, the District Court in *Fontainebleau* expressly stated that the secured lenders' proof of claim was sufficient to establish the amount of their claim for purposes of requiring adequate protection.  424 B.R. at 748.  Shelter Island intends to file its proof of claim contemporaneously with this Objection, in which it asserts a secured claim in the aggregate amount of $3,752,981.67.  Upon information and belief, the Secured Lenders' claims total approximately $6.4 million.

---

[7]    Shelter Island intends to vigorously oppose any such claim as to its liens and takes no position on this issue with respect to the liens held by the other Secured Lenders.

22.     The Debtors' other contentions are either "beside the point," *id.* at 751, or patently flawed.  Here, upon information and belief, the Debtors do not have a buyer for their fast-tracked sale, which must be consummated by December 6, 2010, failing which they must surrender to RACC the twenty-one aircraft that constitute the heart of their businesses.   Given that the Debtors cannot operate their airline without planes, the chapter 11 cases appear headed toward a liquidation less than a month after they were filed.   As Shelter Island will demonstrate, these factors point to a liquidation value, rather than a going concern value, for the Debtors' assets. *See In re Phoenix Steel Corp.,* 39 B.R. 218, 225-27 (D. Del. 1984) (recognizing that "[e]ssential to the valuation of collateral is a judgment as to how long [the debtor] will continue to operate," and after considering the debtor's performance, the speculative projections and other factors, developing an "interim" approach to valuation and using "the mean of liquidation value and going concern value"); *cf. In re Winthrop Old Farm Nurseries, Inc.*, 50 F.3d 72, 75-76 (1st Cir. 1995) (adopting an "approach [that] allows the bankruptcy court, using its informed discretion and applying historic principles of equity, to adopt in each case the valuation method that is fairest given the prevailing circumstances," and choosing to apply fair market value under the circumstances of a case where debtor intended to continue using the property during the chapter 11 case to generate income).

23.     Under the circumstances of this case, it makes no sense to layer on top of the Secured Lenders' secured claims additional DIP financing claims, which must be satisfied from the proceeds of the liquidation of the Secured Lenders' collateral prior to satisfaction of the Secured Lenders' claims.  *See In re Stoney Creek Techs., LLC,* 364 B.R. 882, 895 (Bankr. E.D. Pa. 2007) (finding existing lender in a liquidation scenario is not adequately protected "with the layering of additional debt and rights prior to its own. . . . [A] second position will leave [the

prepetition secured lender] in a compromised position with respect to its secured position.  This is contrary to the well accepted principles articulated by the Third Circuit in *Swedeland*.").  Moreover, a larger DIP Loan merely gives additional leverage to Victory Park should it wish to credit bid, thereby discouraging other bidders and decreasing the likelihood of holding a real auction for the Debtors' assets.

24.    The Debtors argue that the DIP Loan is essential to preserving the value of the estates as a going concern.  When the District Court in *Fontainebleau* was confronted with the identical argument, it recognized that although "[t]hat goal [is] worthy and important," it was not sufficient in an adequate protection analysis.  424 B.R. at 754.  Here, as in *Fontainebleau*, "the Debtors did not try to establish that the decrease in the value of the [secured lenders'] *interests therein* caused by the priming lien was compensated, replaced, or substituted in any way. . . . [They] failed to account for what a priming lien does," and they did not provide the prepetition secured lenders with adequate protection.  *Id.* (emphasis in original).

II.    **The DIP Loan should not be approved, because the Debtors did not attempt to obtain an alternative source of credit on substantially better terms pursuant to 11 U.S.C. § 364(d)(1)(A).**

25.    Although a debtor is not required to seek credit from every possible source, *see In re Snowshoe Co., Inc.,* 789 F.2d 1085, 1088 (4th Cir. 1986), a debtor must show that it made a "reasonable effort" to obtain postpetition financing from other potential lenders on better terms and that such financing was unavailable.  *See In re Ames Dept. Stores,* 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (citations omitted).  A court must make its decision as to "[h]ow extensive the debtor's efforts to obtain credit must be" on a case-by-case basis.  *In re Reading Tube Industries,* 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987).

26.    Here, the Debtors have offered no evidence of their efforts to obtain other postpetition financing or that the DIP Loan from Victory Park was the only financing they were

able to obtain.  The DIP Motion refers to the Declaration of David Hackett, filed on November 4, 2010, as support, but the Hackett Declaration contains no evidence with respect to prepetition financing efforts.   Mr. Hackett refers only to the "abrupt closure earlier this year of the Company's placement agent" and "[s]ince 'that time,' the Company has continuously sought to complete the financing efforts," which resulted in the SVSP investment in September 2010. Hackett Decl. ¶ 32.  There is no basis from this "evidence" on which the Court may conclude that the Debtors adhered to the requirements of section 364(d)(1)(A) of the Bankruptcy Code, and the DIP Motion should be denied.

**III.    Because the terms of the proposed DIP Loan are not "fair, reasonable and adequate," the DIP Loan should not be approved.**

27.      Courts have held that in order for a debtor to obtain postpetition secured financing under section 364(d) of the Bankruptcy Code, the debtor must demonstrate, among other things, that (i) it is unable to obtain unsecured credit; (ii) the credit transaction is necessary to and in fact does preserve the assets of the estate; and (iii) the terms of the proposed financing are fair, reasonable and adequate.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. at 39 ("[A] proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate.").

28.      Here, the terms of the DIP Loan are bordering on usury, when factoring in the other fees and charges in addition to the onerous interest rates.  Specifically, Victory Park is charging 15% interest (and 20% default rate interest) and $265,000 in fees on a $5 million, three-month loan, $250,000 of which allegedly already has been "fully earned" upon interim approval of the DIP Loan.  If, as Shelter Island expects will occur, Victory Park does not advance the remaining $3.5 million of postpetition funding, it nevertheless would have earned well in excess of a 15% return on its initial investment of $1.7 million.  Notwithstanding the Debtors' hollow

assurances that those terms are "fair and reasonable," the DIP agreement speaks for itself.  The

DIP Motion must be denied.

## CONCLUSION

29.     WHEREFORE, Shelter Island respectfully requests that the Court (i) deny the

DIP Motion or, (ii) in the alternative, freeze the DIP Loan at $1.7 million and prohibit Victory

Park from advancing any additional funds thereunder, and (iii) grant such further relief as justice

and equity require.

Dated:      November 29, 2010
            Fort Lauderdale, Florida          GREENBERG TRAURIG, P.A.

                                               _/s/ Scott M. Grossman_____
                                              Scott M. Grossman (FL Bar No. 0176702)
                                              401 East Las Olas Blvd., Suite 2000
                                              Fort Lauderdale, Florida 33301
                                              Telephone: (954) 765-0500
                                              Facsimile: (954) 765-1477
                                              grossmansm@gtlaw.com

                                              -and-

                                              Paul J. Keenan Jr. (FL Bar No. 0594687)
                                              333 Avenue of the Americas
                                              Miami, Florida 33131
                                              Telephone: (305) 579-0500
                                              Facsimile: (305) 579-0717
                                              keenanp@gtlaw.com

                                              -and-

                                              GREENBERG TRAURIG, LLP
                                              Jeffrey M. Rosenthal
                                              200 Park Avenue
                                              P.O. Box 677
                                              Florham Park, NJ 07932
                                              Telephone:  (973) 360-7900
                                              Facsimile:  (973) 301-8410
                                              rosenthalj@gtlaw.com

                                              -and-

Rachel Ehrlich Albanese
200 Park Avenue
New York, NY 10166
Telephone:  (212) 801-9200
Facsimile: (212) 801-6400
albaneser@gtlaw.com

*ATTORNEYS FOR SHELTER ISLAND*
*OPPORTUNITIES FUND, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on Mon, Nov 29, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below  in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF, by email, or by first class U.S. Mail, postage prepaid, on those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing, <u>and</u> via email and U.S. mail upon:

Berger Singerman, P.A.
Attn.: Brian K. Gart, Esq.
 and Douglas A. Bates, Esq.
350 E. Las Olas Boulevard
Suite 1000
Fort Lauderdale, FL 33301
E-mail: bgart@bergersingerman.com

Berger Singerman, P.A.
Attn.: Douglas A. Bates, Esq.
200 S. Biscayne Boulevard
Suite 1000
Miami, FL 33131
E-mail: dbates@bergersingerman.com

Gulfstream International Group, Inc., et al
Attn: David F. Hackett, Chief Executive
Officer and President
3201 Griffin Road, 4th Floor
Fort Lauderdale, FL 33312
E-mail: dhackett@gulfstreamair.com

Dated Mon, Nov 29, 2010
    Miami, Florida

_____/s/ Scott M. Grossman_____
            Scott M. Grossman

**Electronic Mail Notice List**

The following is the list of parties who are currently on the list to receive e-mail notice/service for this case.

*Via CM/ECF*

Jeffrey Bast on behalf of Creditor Taglich Brothers, Inc.
jbast@bastamron.com, jdepina@bastamron.com;dquick@bastamron.com

Douglas A Bates on behalf of Debtor Gulfstream International Group, Inc.
dbates@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com

Eyal Berger on behalf of Creditor Victory Park Capital Advisors, LLC
eyal.berger@akerman.com, jeanette.martinez@akerman.com

Mark F Booth     mfbooth@rmzlaw.com
Steven R Braten     sbraten@bankruptcy-creditors.com, sndlawfirm@yahoo.com

Brian K Gart on behalf of Debtor GIA Holdings Corp., Inc.
bgart@bergersingerman.com, clamb@bergersingerman.com;efile@bergersingerman.com

Emily S Gottlieb on behalf of Noticing / Claims Agent The Garden City Group, Inc
jessica.wasserstrom@gcginc.com,
paul.kinealy@gardencitygroup.com;PACERteam@gardencitygroup.com;Matt.Corwin@gardenc
itygroup.com;Marcy.Uhrig@gardencitygroup.com;Brian.Karpuk@gardencitygroup.com;Ira.Nik
elsberg@gardencitygroup.com;Karen.Gaffney@gardencitygroup.com

Andrea Horowitz Handel on behalf of Creditor United States America
andrea.handel@usdoj.gov

Hollie N Hawn     hhawn@broward.org

Paul J. Keenan, Jr. on behalf of Creditor Shelter Island Opportunity Fund, LLC
keenanp@gtlaw.com, reisinoa@gtlaw.com;mialitdock@gtlaw.com;miaecfbky@gtlaw.com

Matthew I. Kramer     mkramer@bilzin.com,
eservice@bilzin.com;lflores@bilzin.com;abeck@bilzin.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Robert A. Schatzman     robert.schatzman@gray-robinson.com, marilyn.rivera@gray-
robinson.com

Mark J Wolfson on behalf of Creditor Raytheon Aircraft Credit Corporation
mwolfson@foley.com, btanner@foley.com;jhayes@foley.com

*Via e-mail*

Yvonne Hall on behalf of Aircraft Service Int'l, Inc.
yvonne.hall@asig.com

Justin Dennis on behalf of Airline Transport Professionals
justin@allatps.com

James H. Fierberg, Esq. on  behalf of Akerman Senterfitt
James.fierberg@akerman.com

Arnold Netto
vichiett@hotmail.com

Ashley Davis-Lasley
aed278@email.vccs.edu

Brian Thompson on behalf of Atlantiv Turbines
Brian.Thompson@vectoraerospace.com

Stephen Kappeler on behalf of Bahamas Out Island Promotion Board
myoutislands.com

Benjamin Allen
jeepmaster821@hotmail.com

Alda Smith on behalf of Broward County Aviation Dept.
aismith@broward.org

Donald Figliulo on behalf of Bryan Cave LLP
don.figliulo@bryancave.com

Cameron Martin
ctsuites@yahoo.com

Jennifer Greenberg on behalf of CIGNA
jennifer.greenberg@cigna.com

Kim Repetowski on behalf of Continental Airlines
krepet@coair.com

April Pearson on behalf of County of Monroe
pearson-april@monroecounty-fl.gov

Elizabeth Figueroa
lizcruiser@yahoo.com

Thomas P. Cooper on behalf of EYW Holdings Inc.
tpcooper@gulfstreamair.com

Tom Brown or Pamela Pak on behalf of Federal Aviation Administration
tom.brown@faa.gov, tsa-fees@dhs.gov

Joseph Andrew Johnson on behalf of Flight Safety International
Andy.johnson@flightsafety.com

Jeffrey M. Rosenthal, Esq. and Rachel Ehrlich Albanese, Esq. on behalf of Greenberg Traurig
rosenthalj@gtlaw.com, albaneser@gtlaw.com

Gulfstream International Group, Inc.
dhacke@gulfstreamair.com, epanel@gulfstreamair.com, kjanusz27@gmail.com

Jean Paul Mumford
jpvmumford@hotmail.com

Jeffrey Mays
dmays0315@bellsouth.net

Stuart Klaskin on behalf of Jetstream Aviation Capital, LLC
saklaskin@jetstreamintl.com

Jonathan Morales
delta1926@hotmail.com

Andrew B Steinberg on behalf of Jones Day
absteinberg@jonesday.com

Juan Ramirez
juan_david009@hotmail.com

Meet Patel
meetpatel21@hotmail.com

Jennifer Efflandt on behalf of Mesa Air Group, Inc.
jennifer.efflandt@mesa-air.com

Pamela Lafrance on behalf of Miami Dade Aviation Dept.
jbanos@miami-airport.com, plafrance@miami-airport.com

Monica Nowos
monicanowos@hotmail.com

Nassau Airport Development Co. Ltd.
paula.rigby@nas.bs

Honorable Wifredo A. Ferrer  on behalf of the Office of the United States Trustee
grisel.alonso@usdoj.gov

Lori Martin on behalf of Pioneer Credit Recovery (Past Due TSA)
pca@pioneer-credit.com

Billes Vivier on behalf of Pratt & Whitney Canada Corp.
Nadia.Di.Rienzo@pwc.ca, james.tempel@pwc.ca

Thomas Rhine on behalf of Praff & Whitney Engine Services, Inc.
gilles.vivier@pwc.ca

Peter D Schellie, Esq on behalf of Raytheon Aircraft Credit Corp
peter.schellie@bingham.com

Robert J Paterno
rpaterno@paternolaw.com

 S. Baena and M. Kramer on behalf of Sah-Vul Strategic Partners I LLC
sbaena@bilzin.com, mkramer@bilzin.com

Secretary of State
secretaryofstate@dos.state.fl.us

Siddartha Bravo
uss_bravo@hotmail.com

The Garden City Group, Inc.
giateam@gardencitygroup.com

Charles Asfour on behalf of Victory Park Capital Advisors, LLC
casfour@vpcadvisors.com

Michael E. Goldberg, Esq on behalf of Victory Park Capital Advisors, LLC
michael.goldberg@akerman.com

Ethan Garcia, Roy Portala and A Vidalon on behalf of World Fuel Services of Florida
egarcia@wfscorp.com, avidalon@wfscorp.com

G Richard Hicks
grh101@yahoo.com

Beth Hansen, Esq. on behalf of Goodrich Corporation
beth.hansen@goodrich.com

R Kenneth Lindell on behalf of Gregory McDaniel SEP IRA
ken@rklindell.com

Robert Schroeder, Man Member on behalf of Gulfstream Funding II, LLC
schroeder@taglichbrothers.com

Pedro J Mercado, Asst County Atty on behalf of Monroe County Board
mercado-pedro@monroecounty-fl.gov

F Scott Wilson, Esq. and Peter Kotiadis on behalf of Pratt & Whitney Canada Corp
f.scott.wilson@pw.utc.com; Peter.Kotiadis@pwc.ca

Carren B. Shulman, Esq. on behalf of Goodrich Corporation
cshulman@sheppardmullin.com

Eric Gabrielle for Stearns Weaver Miller Weissler Alhadeff
egabrielle@swmwas.com

Matthew Ray and Scott Zemnick on behalf of Victory Park Capital Advisors, LLC
mray@vpcadvisors.com; szemnick@vpcadvisors.com

**Manual Notice List**

The following is the list of parties who are not on the list to receive e-mail notice/service for this case, and are therefore being served by first class U.S. Mail, postage prepaid:

See attached service list

American Express
PO Box 360001
Ft. Lauderdale, FL 33336

Ashley Sullivan
15405 NW 7th Ave
Miami, FL 33169

Auerbach Family Trust
Attn: Larry Auerbach, Trustee
1040 Cove Way
Beverly Hills, CA 90210

Bahama Investments Family
Attn Ralph Eckler
190 Sykes Loop Drive
Merritt Island, FL 32953

Bahamas Immigration FPO
Attn Dorothy Rolle
C/O Public Treasury
Freeport, Grand Bahamas

Bonnier Active Media Inc.
PO Box 8500
Winter Park, FL 32790

Brier, Andrea Lynn R/O DCG&T
1364 Union Street, #B
San Francisco, CA 94109

Broward County
Revenue Collector
Governmental Center Annex
115 South Andrews Avenue
Fort Lauderdale, FL 33301

California First Leasing
Corporation
180201 Von Karman Ave
Suite 800
Irvine, CA 92612

Cavok
Attn Peter Feldman
PO Box 3800-28
Boston, MA 02241

City Of Atlanta
Department Of Aviation
PO Box 920500
Atlanta, GA 30392

Cleveland Hopkins Int'l.  Airport
Treasurer, City Of Cleveland
Keybank Services, Lockbox #70275
2025 Ontario Avenue
Cleveland, OH 44115

Continental Airlines
1600 Smith Street
Houston, TX 77002

Cooper Trading Corporation
C/O Mark Booth, Esq.
Victoria Park Centre, Suite 300
1401 E. Broward Boulevard
Fort Lauderdale, FL 33301

Craig Macnab
1860 Summerland Ave.
Winter Park, FL 32789

Daytona Beach Int'l Airport
Attn: Finance Dept.
C/O County Of Volusia
700 Catalina Drive, Suite 300
Daytona Beach, FL 32114

Department  of Civil Aviation
Exuma International Airport
Security Department
Georgetown, Exuma, Bahamas

Department of Civil Aviation
C/O The Treasury Department
P.O. Box N-7524
Nassau, N.P., The Bahamas BS

Federal Aviation Administration
Attn J R Babbit, Administrator
U.S. Department Of Transportation
800 Independence Avenue, SW
Washington DC 20591

Florida Department of Revenue
PO Box 6668
Tallahassee, FL 32314

Florida Department Of Revenue
C/O Agency Clerk
501 S. Calhoun St
Rm 201 Carlton Bldg
Tallahassee, FL 32399

Florida Department Of Treasury
5050 West Tennessee St
Tallahassee, FL 32399

Florida Department of Treasury
200 East Gaines St
Tallahassee, FL 32399

Glenn Richard Hicks Roth
DCT&T
21 Tanfield Rd
Tiburon, CA 94920

Gov't of the Virgin Islands
Department of Civil Aviation
PO Box 3013
Road Town, Tortola B.V.I.

Grand Bahamas Airport
Company
PO Box F-40916
Freeport, Bahamas

Robert A. Schatzman, Esq.
GrayRobinson, P.A.
1221 Brickell Ave, Ste 1650
Miami, FL 33131

Greater Orlando Aviation Auth.
P.O. Box 864634
Orlando, FL 32886

Gregory Mcdaniel SEP IRA
85 Howes Road
Montville, ME 04941

Gulfstream Funding II, LLC
c/o Douglas E. Hailey
Robert Schroeder
861 Maggies Way
Waterbury Center, VT 05677

Gulfstream Funding Ii, Llc
C/O Taglich Brothers, Inc.
as Agent
275 Madison Avenue, Suite 1618
New York, NY 10016

Hawker Beechcraft Corp
Attn Sandy Hollingshead
PO Box 102470
Atlanta, GA 30368

Helio Mestrovic
4378 Dogwood Circle
Weston, FL 33331

Internal Revenue Service
Attn  Insolvency Section
PO Box 21126
Philadelphia, PA 19114

Hillsborough County Aviation
Authority
PO Box 22287
Tampa, FL 33622

Irwin Union Bank And Trust Co
8001 N 500 Ste 103W
Bountiful, UT 84010

Internal Revenue Service
Attn Herman Hooker
51 SW 1st Ave Rm 700
Miami, FL 33130

Internal Revenue Service
Attn Jacqueline Kelly
Insolvency Unit
7850 SW 6th Ct
Plantation, FL 33324

**Jurgen
Von Sete
99999
Us**

Jacqueline Portuondo
7250 West Lago Drive
Miami, FL 33143

James Tiampo Money
Purchase Plan
Attn: James J Tiampo
435 Martin Street, Suite 3090
Blaine, WA 98230

Larry And Betty Mcnamara
111 Baylor Drive
Oak Ridge, TN 37830

Kenin Spivak
702 North Hillcrest Road
Beverly Hills, CA 90210

Kurtzman, Chana & Zvi
Kurtzman
Cipora Lavut
419 Oakmont Pl., N.W.
Atlanta, GA 30327

Margaret B. Heglund Liv. Trust
Attn: M. B. Heglund, Trustee
104 Brooksby Village Dr, #315
Peabody, MA 01960

Leary Dunn
1348 Avon Lane Apt 834
Pompano Beach, FL 33068

Macathel LP
Attn: James Boettener
946 Pelton Drive
Menlo Park, CA 94025

Nancy L Boyce
84 6th Street
Shalimar, FL 32579

Mark Ottosen
PO Box 7312
Fort Lauderdale, FL 33338

Michael Portuondo
6630 SW 85th Street
Miami, FL 33143

Office of the Attorney General
The Capitol Pl-01
Tallahassee, FL 32399

Nelson Luis
2121 N Bayshore Dr  Apt 1416
Miami, FL 33137

Norman C. Heglund
Chemin Du Moulin Delay 6
1473 Glabais, Belgium

Raytheon Aircraft Credit Corp
101 S Webb Street
Suite 300
Wichita, KS 67207

Orlando Airport Authority
Greater Orlando Aviation
Authority GOAA
Orlando International Airport
One Airport Blvd
Orlando, FL 32827

Palm Beach County
Dept. of Airports
846 Palm Beach Int'l Airport
West Palm Beach, FL 33406

Regina C. Lemmer Revoc. Trust
Attn: Regina C Lemmer, Trustee
107 Clubhouse Lane, #193
Naples, FL 34105

Raytheon Aircraft Credit Corp
8300 Thorn Drive
Suite 100
Wichita, KS 67226

Raytheon Aircraft Credit Corp.
Attn John A Kurz
101 South Webb Road, Suite 300
Wichita, KS 67207

Ruben & Ann B Kueffner Trust
Attn: Ann B Kueffner, Trustee
2270 Mcewan Street
Saginaw, MI 48602

Roger Berkon
1715 N E 36 St
Oakland Park, FL 33334

Rogers, Morris & Ziegler Llp
Attn Mark F. Booth, Esq.
Victoria Park Centre Suite 300
1401 E. Broward Blvd
Fort Lauderdale, FL 33301

Shelter Island
Opportunity Fund, LLC
Attn Micheal E Fein
535 5th Ave FL 25
New York, NY 10017

Sah-Vul Strategic Partners I LLC
1690 South Congress Ave
Suite 200
Delray Beach, FL 33445

Shelter Island
Opportunity Fund LLC
535 5th Ave FL 25
New York, NY 10017

Special Asst U.S. Attorney
IRS District Counsel
1000 S Pine Island Rd, Ste 340
Plantation, FL 33324

Sky West Inc
444 South River Road St
George, UT 84709

Special Asst U.S. Attorney
PO Box 9 Stop 8000
51 Sw First Ave #1114
Miami, FL 33130

TGAAP, LLC
32 Grimes Ave
East Boothbay, ME 04544

Stephen Williams
1041 NE 204 Terrace
North Miami, FL 33179

Tara Arnold IRA DCG&T
4740 Murcott Avenue
Merritt Island, FL 32953

U.S. Department Of Justice
Eastern Regional Office
70  Kimball Ave
So Burlington, VT 05403

The Richard S. Friedman
2008 Revocable Trust
730 Intracoastal Drive
Ft. Lauderdale, FL 33304

U. S. Customs & Border
Protection
Attn: User Fee Team
Revenue Division
6650 Telecom Drive, Suite 100
Indianapolis, IN 46278

Wachovia Financial Services Inc
One Wachovia Center
Mail Code NC 0738
Charlotte, NC 28288

United States Attorney
500 S Australian Ave.
Ste 400
West Palm Beach, FL 33401

USDA, APHIS, AQI
PO Box 979044
St. Louis, MO 63197

Wood County Airport Authority
P.O.Box 4089
Parkersburg, WV 26104

Willow A Al-Shamma
330 East Bay Blvd N
Traverse City, MI 49686

Wolfe Axelrod
Weinberger Assoc.
Attn: Stephen D. Axelrod
317 Madison Ave, Suite 515
New York, NY 10017

Bahamas Out Island
Promotion Board
Attn: Stephen Kappeler
Notels Center
Cable Beach, Bahamas