UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| GULFSTREAM INTERNATIONAL GROUP INC., ET AL., | Case No. 10-44131-BKC-JKO<br>Jointly Administered |
| Debtor.<br>_____/ | Hearing Date: December 1, 2010 1:30 p.m.<br>Objection Deadline: November 29, 2010 4 p.m. |

**OBJECTION OF TAGLICH BROTHERS, INC. TO DEBTORS' MOTION FOR FINAL ORDER AUTHORIZING (A) SECURED POST-PETITION FINANCING; (B) GRANTING SECURITY INTERESTS, SUPERPRIORITY LIENS AND CLAIMS AND ADEQUATE PROTECTION; AND (C) USE OF CASH COLLATERAL**

Taglich Brothers, Inc., as collateral agent for itself and the Purchasers, as defined below, ("Taglich"), by and through undersigned counsel, submits this objection (this "Objection") to the entry of a final order granting the "Motion for Interim and Final Orders (I) Authorizing (A) Secured Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), (c)(2), (c)(3), and (d); Granting Security Interests, Superpriority Liens and Claims and Adequate Protection; and (C) Use of Cash Collateral and (II) Scheduling Final Hearing" [D.E. #8] (the "Cash Collateral Motion"), and moves, pursuant to Federal Rule of Bankruptcy Procedure 9024, for relief from the Interim Order Granting the Cash Collateral Motion [D.E. #76] (the "Interim Order"), to the extent that it purports to prime its interests, on the grounds that it was entered without sufficient notice to Taglich and respectfully states as follows:

**I.    BACKGROUND**

*A.  The Taglich Debt*

Taglich is the collateral agent for itself and the Purchasers, Shadow Capitol LLC, Dennis Fortin, Michael N. Taglich, Robert W Allen Trust UAD 04/29/08, John R Bertsch Trust DTD

12/4/2004, Hillson Partners LP, Angus Bruce and Laura Lee Bruce, Andrew K. Light, David A. Random, David Frank Rios & Margaret Jo Rios 1999 Trust DTD 6/22/99, Jeffrey G. Hipp & Mary Ann Hipp JT/WROS, Robert F. Taglich, The Shirley J. Lewis Rev Trust, Raymond M. Beebe & Joan P. Beebe JTWROS, Norper Investments, and Ashok Kumar Narang (collectively, the "Purchasers").

As of August 31, 2010, GIG was indebted to Taglich and the Purchasers in the aggregate principal amount of $1,050,000, together with accrued and unpaid interest thereon (the "Taglich Debt") pursuant to a Purchase Agreement dated as of February 26, 2010 among Gulfstream International Group, Inc. ("GIG"), Taglich and the Purchasers (the "Taglich Purchase Agreement"), which Taglich Debt is evidenced by GIG's notes in the aggregate principal amount of $1,050,000 in favor of the Purchasers, and which are guaranteed by each Subsidiary of GIG (together with all other documents executed in connection with the Taglich Debt and in effect on the date hereof, collectively, the "Taglich Debt Documents").

The obligations of GIG under the Taglich Debt Documents are secured by a first priority lien and security interest (the "Taglich Lien") in the "Accounts[1]" (as that term is defined in the Security Agreement dated as of February 26, 2010 among GIG, Taglich, as agent for the Purchasers, and certain subsidiaries of GIG) of GIG and its Subsidiaries, whether now owned or

---

[1] The Accounts include all personal property and other assets, whether not owned by or owing to, or hereafter acquired by or arising in favor of the Debtors (including under any trade names, styles or derivations thereof), and whether owned or consigned by or to, or leased from or to the Debtors, and regardless of where located including, without limitation: all (i) Accounts; (ii) Chattel Paper; (iii) Documents; (iv) General Intangibles (including payment intangibles and Software); (v) Goods (including Inventory, Equipment and Fixtures); (vi) Instruments; (vii) Investment Property; (viii) Deposit Accounts and all other bank accounts and all deposits therein; (ix) money, cash and cash equivalents; (x) Supporting Obligations and Letter-of-Credit Rights; (xi) commercial tort claims; and (xii) Proceeds, tort claims, insurance claims and other rights to payment not otherwise included in the foregoing and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing.

hereafter acquired and any and all additions and accessions to any of the foregoing, and any and all replacements, proceeds (including credit insurance proceeds of such Accounts) and substitutions of any of the foregoing wherever located (collectively, the "Taglich Collateral") subject and subordinate to the first priority lien and security interest in favor of SAH-VUL Strategic Partners I, LLC ("SVSP") in the Cuba Business Collateral in accordance with the terms hereof.

### B. *The Interim Order*

On November 4, 2010 the Debtors filed their Cash Collateral Motion. Through the Cash Collateral Motion, the Debtors sought, among other things, the entry of an order approving post-petition financing of $5.0 million with an immediate interim order approving initial post-petition financing in the amount of $1.5 million from Victory Park Capital Advisors, LLC (the "Lender") secured by a perfected first priority lien on all assets of the Debtors, including the Accounts in which Taglich held a first priority interest.

On November 5, 2010, the Court conducted a hearing on the Cash Collateral Motion (the "Hearing") at which the Debtors requested approval of an immediate advance from the Lender in the amount of $1.7 million (the "Initial Loan"). On November 10, 2010, the Court authorized and empowered the Debtors to obtain the Initial Loan from the Lender and use the cash collateral (the "Interim Order") [D.E. #76].

Taglich did not receive notice of the Hearing until shortly before the Hearing was scheduled to take place and therefore Taglich was not able to attend the Hearing. Taglich was also not represented by counsel until after the entry of the Interim Order.

As security for the Initial Loan, the Interim Order provided the Lender with priming liens in all currently owned or thereafter acquired property and assets of the Debtors. The Debtors

now seek additional post-petition financing in the amount of $3.3 million (the "Final Loan"), the balance of the $5.0 million originally sought, from the Lender also secured by a perfected first priority lien on all assets of the Debtors, including the Accounts. The Cash Collateral Motion does not provide, and the Debtors have not offered, any assurances that the Taglich Debt will be adequately protected if the Final Loan is approved.

On November 29, 2010, Shelter Island Opportunity Fund, LLC ("Shelter Island") filed an objection to the Cash Collateral Motion (the "Shelter Island Objection"). Taglich hereby joins, adopts and incorporates by reference the arguments asserted by Shelter Island in the Shelter Island Objection in addition to the arguments raised herein.

## II.     OBJECTION

### A. The Interim Order was Granted without Proper Notice to Taglich.

Taglich objects to and moves the Court for relief from the Interim Order to the extent that it purports to prime its secured interests in the Debtors' Accounts. Taglich was given no notice of the Hearing on the Cash Collateral Motion and did not have counsel present at that hearing to object to the Cash Collateral Motion or to defend its interests. Accordingly, Taglich is entitled to relief from the Interim Order. Accordingly, Taglich is entitled to relief from the Interim Cash Collateral Order. *See In re Center Wholesale, Inc.,* 759 F.2d 1440, 1449 (9th Cir. 1985) (order granting priming lien without notice is void); *In re Blumer,* 66 B.R. 109, 114 (9th Cir. BAP 1986) (*ex parte* order imposing senior lien on real property is void); *In re Monach Circuit Industries, Inc.,* 41 B.R. 859, 861 (Bankr. E.Pa. 1984) (borrowing order entered without notice to affected party is void as to that party, and may be challenged at any time under Bankruptcy Rule 9024, which incorporates Rule 60, F.R.Civ.P.). As set forth below, the Debtors cannot demonstrate

adequate assurance of Taglich's interest to support either the use of Taglich's cash collateral or the priming lien in favor of Victory Park.

### B. Taglich's Interest in Cash Collateral is Not Adequately Protected.

Bankruptcy Code section 363 provides that a debtor may not use, sell, or lease cash collateral unless the debtor obtains consent to the use of cash collateral or the court authorizes the use of cash collateral and the entities with interests in such cash collateral are adequately protected. *See* 11 U.S.C. §§ 363(b), 363(e); *see also In re Delta Resources, Inc.*, 54 F.3d 722 (11th Cir. 1995). The Debtors have not obtained Taglich's consent to the continued use of cash collateral. As a result, the Debtors may not use cash collateral unless the Debtors demonstrate that Taglich's interest is adequately protected. Courts have held that the adequate protection requirement for the non-consensual use of cash collateral is mandatory. *See Reisner v. Dayton Country Club Co. (In re Magness)*, 972 F.2d 689 (6th Cir. 1992).

Bankruptcy Code section 361 provides that adequate protection required under section 363(e) may be provided by: (1) requiring the Debtors to make one or more cash payments to Taglich to the extent of any decrease in the value of Taglich's interest; (2) providing Taglich additional or replacement liens to the extent of any decrease in the value of Taglich's interest; or (3) granting Taglich other relief that will result in the realization by Taglich of the indubitable equivalent of its interest. *See* 11 U.S.C. § 361.

The Debtors have not sustained their burden[2] to demonstrate that Taglich will be adequately protected as required under the Bankruptcy Code. Taglich believes the Debtors have depleted the Accounts post-petition to the extent and the Debtors' operations have not generated

---

[2] The Debtors bear the burden of proof on demonstrating adequate protection. *See In re Swedeland Dev. Group*, 16 F.3d 552, 564 (3d Cir. 1994).

sufficient post-petition sales to replenish the Accounts.[3] Because the Accounts are largely the only source of "cash collateral", depletion of the Accounts (Taglich's Collateral) is virtually certain. There is also no evidence that the Final Loan will increase operations and revenues to a point that the proposed replacement liens on the Accounts will be sufficient to fully secure the Taglich Debt. And the Debtors have neither proposed nor demonstrated any other form of adequate protection that will provide Taglich the indubitable equivalent of its interests in cash collateral.

In other words, the Debtors cannot satisfy any of the elements of Bankruptcy Code section 361. Granting any further use of cash collateral will only result in a further diminution of the value of Taglich's interest in the cash collateral. Accordingly, to the extent that the Debtors seek further use of cash collateral, this Court should deny the Cash Collateral Motion on a final basis.

### C. The Court Should Deny the Final Loan to the Extent it Proposes to Prime Taglich's Security Interest.

Additionally, the Court should deny authorization of the Final Loan of $3.3 million which seeks to prime Taglich's first priority security interest in the Accounts. The Debtors' initial projections do not reflect a need for the Final Loan. The Debtors' budget shows positive cash flow without the $3.3 million cash infusion and the Debtors have not provided any updated financial information that shows otherwise. But even if the Debtors can show an immediate need for the additional financing, the Debtor should not be permitted to prime Taglich's first priority security interest in the Accounts. As set forth above, the Debtors are unable to adequately protect Taglich's interest in cash collateral. Taglich's interest is already jeopardized by the $1.7

---

[3] Since its retention in this case, undersigned counsel has requested on numerous occasions to schedule a call with the Debtors' financial advisor to discuss the Debtors continued use of cash collateral and adequate protection of Taglich's interest in the Accounts. To date, no call has even been scheduled.

million Initial Loan.  The Final Loan of another $3.3 million will only exacerbate the problem, leaving Taglich not only unprotected but potentially unsecured.  Finally, the Debtors cannot demonstrate any material benefit to the estate or its creditors from the Final Loan.

Taglich reserves the right to assert at any hearings any additional arguments and evidence in opposition to the relief requested by the Debtors.

WHEREFORE, Taglich respectfully requests that the Court enter an Order (i) granting it relief from the Interim Cash Collateral Order to the extent it purports to prime its liens and interests in the Accounts; (ii) denying the Cash Collateral Motion on a final basis; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: November 29, 2010

    Respectfully submitted,

    **BAST AMRON LLP**
    *Counsel for Taglich Brothers, Inc.*
    SunTrust International Center
    One Southeast Third Avenue
    Suite 1440
    Miami, Florida 33131
    Telephone: 305-379-7904
    Facsimile: 305-379-7905
    E-mail:  jbast@bastamron.com
           jeder@bastamron.com

    By: /s/ *Jeffrey P. Bast*
        Jeffrey P. Bast, Esq. (FBN 996343)
        John R. Eder. Esq. (FBN 046720)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served electronically via the Court's CM/ECF system where available, upon the parties listed below this 29th day of November, 2010.

/s/ *Jeffrey P. Bast*
Jeffrey P. Bast

**SERVICE LIST**

- Scott L. Baena    sbaena@bilzin.com, eservice@bilzin.com;lflores@bilzin.com;abeck@bilzin.com
- Jeffrey Bast    jbast@bastamron.com, jdepina@bastamron.com;dquick@bastamron.com
- Douglas A Bates    dbates@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com
- Eyal Berger    eyal.berger@akerman.com, jeanette.martinez@akerman.com
- Mark F Booth    mfbooth@rmzlaw.com
- Steven R Braten    sbraten@bankruptcy-creditors.com, sndlawfirm@yahoo.com
- Brian K Gart    bgart@bergersingerman.com, clamb@bergersingerman.com;efile@bergersingerman.com
- Emily S Gottlieb    jessica.wasserstrom@gcginc.com, paul.kinealy@gardencitygroup.com;PACERteam@gardencitygroup.com;Matt.Corwin@gardencitygroup.com;Marcy.Uhrig@gardencitygroup.com;Brian.Karpuk@gardencitygroup.com;Ira.Nikelsberg@gardencitygroup.com;Karen.Gaffney@gardencitygroup.com
- Andrea Horowitz Handel    andrea.handel@usdoj.gov
- Hollie N Hawn    hhawn@broward.org
- Paul J. Keenan, Jr.    keenanp@gtlaw.com, reisinoa@gtlaw.com;mialitdock@gtlaw.com;miaecfbky@gtlaw.com
- Matthew I. Kramer    mkramer@bilzin.com, eservice@bilzin.com;lflores@bilzin.com;abeck@bilzin.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Robert A. Schatzman    robert.schatzman@gray-robinson.com, marilyn.rivera@gray-robinson.com
- Steven J. Solomon    steven.solomon@gray-robinson.com, lnegron@gray-robinson.com;marilyn.rivera@gray-robinson.com
- Frank Terzo    frank.terzo@gray-robinson.com, lnegron@gray-robinson.com;jennifer.phillips@gray-robinson.com
- Mark J Wolfson    mwolfson@foley.com, btanner@foley.com;jhayes@foley.com