UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                          Chapter 11 Cases

GULFSTREAM INTERNATIONAL                                        Case No.: 10-44131-JKO
GROUP, INC., et al.,[1]                                         Jointly Administered

_____Debtors._____/


# EMERGENCY MOTION OF THE OFFICIAL COMMITTEE
# OF UNSECURED CREDITORS TO CONVERT CASES TO CHAPTER 7

**(Emergency Hearing Requested)**

> Pursuant to Local Rule 9075-1, the Committee asks this Court to consider this Motion on December 30, 2010 at 9:30 a.m. in conjunction with other related matters concerning the Debtors' bankruptcy cases. If the Committee's motion to convert is granted, it will be unnecessary to continue with the auction and sale process scheduled for the week of January 3, 2011. Therefore, the Committee believes it is necessary for this matter to be considered on an emergency basis. The Committee has made a bone fide attempt to resolve the disputed issues without success.

The Official Committee of Unsecured Creditors of Gulfstream International Group, Inc. (the "Committee"), by and through undersigned counsel, and pursuant to 11 U.S.C. §1112(b) *et seq*. (the **"Bankruptcy Code"**) and Rules 1017, 1019, and 9014 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**)**,** files this Motion to Convert Cases to Chapter 7 **("Motion")** and states:

---
[1] The Debtors are defined as Gulfstream International Group, Inc.; Gulfstream International Airlines, Inc.; (iii) Gulfstream Training Academy, Inc.; (iv) GIA Holdings Corp., Inc.; and (v) Gulfstream Connection, Inc.

## JURISDICTION

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Venue is proper in this district under 28 U.S.C. § 1408 and 1409.

4. The statutory predicate for the relief requested herein is 11 U.S.C §1112(b) and Bankruptcy Rules 1017, 1019, and 9014.

## PROCEDURAL HISTORY

5. On November 4, 2010 (the **"Petition Date"**), each of the Debtors filed with the Clerk of the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code [D.E. #1].

6. Since the Petition Date, the Debtors have continued to operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. These cases are being jointly administered for procedural purposes only and no trustee or examiner has been appointed.

7. The Committee was appointed by the Office of the United States Trustee by notice dated November 19, 2010 [D.E. #94]. On December 3, 2010, this Court entered an order authorizing the retention of GrayRobinson P.A. as counsel to the Committee [D.E. #188].

## BRIEF BACKGROUND OF RELIEF REQUESTED

8. Over the past week, the Debtors' bankruptcy cases have regressed to a point where the Committee sees no reason to continue in chapter 11. Since its formation, the Committee has worked supportively with the various constituencies to the Debtors'

bankruptcy cases in the hopes such cooperation would yield a result which respected the principles of the chapter 11 process.

9. Specifically, the Committee has worked continually and consistently with each of the Junior Lenders in order to agree upon a cash collateral budget and sales process which could provide the best recovery for creditors.[2]

10. Over the past several days, each of the Junior Lenders (especially Shelter Island and Taglich Brothers) have withdrawn their support of the budgeted administrative expenses (especially those relating to professional fees) and have refused to provide any response to a proposed carve-out for the benefit of the Debtors' general unsecured creditors. Nevertheless, the Junior Lenders unequivocally wish to utilize the chapter 11 process in order to facilitate an auction sale of the collateral pledged to each of them.

11. Shelter Island has offered to re-evaluate the unfunded administrative expenses and the possibility of a carve-out for unsecured creditors after the completion of the sale process. The Committee views this offer as hollow and disingenuous because the Junior Lenders will likely have no incentive to make appropriate accommodations after already benefiting from the chapter 11 sale process.

12. The Junior Lenders have placed the Committee in an unfortunate position with no alternatives. Since the Committee cannot support a sale process which is geared to benefit primarily the secured creditors without addressing all associated administrative expenses, the Committee has no choice but to seek the conversion of the Debtors' bankruptcy cases to chapter 7.

---

[2] As referenced in numerous court papers, Junior Lenders means, collectively Shelter Island Opportunity Fund, LLC ("Shelter Island"), Taglich Brothers, Inc. ("Taglich") as collateral agent on its own behalf and for the Purchasers listed on Exhibit A to the Taglich Debt Documents (together with Taglich, individually and collectively, the "Taglich Note Purchasers"), and SAH-VUL Strategic Partners I, LLC ("SVSP").

## PROCEDURAL HISTORY

13. Shortly after the Petition Date, and before the formation of the Committee, this Court granted the *Interim Order (I) Authorizing (A) Secured Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364(c) and (d); (B) Granting Security Interests, Superpriority Liens and Claims and Adequate Protection; and (C) Use of Cash Collateral and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(C)*, dated November 10, 2010 )("Cash Collateral Order") [D.E. #75]. This Cash Collateral Order incorporated a budget which initially allowed the Debtors to use cash collateral to continue to operate as a going concern.

14. This Cash Collateral Order was thereafter extended on two (2) occasions [D.E. Nos. 208 and 237], each time to address operational expenses, including the payment of professional fees. The third iteration of the Cash Collateral Order, entered on December 22, 2010 [D.E. #237], addresses the payment of administrative expenses, including professional fees.

15. The third interim Cash Collateral Order was the product of numerous discussions by and among the professionals retained by the Junior Lenders, the Debtors and the Committee, with specific time and attention spent on the careful budgeting of professional fees. Moreover, at the behest of the Junior Lenders, counsel for each of the Committee and the Debtors gave substantial fee concessions in order to reduce the Debtors' operational cash requirements. Prior to a hearing before this Court on December 17, 2010 (outside of Your Honor's Courtroom), the professionals agreed upon the payment of professional fees for the Debtors and the Committee in accordance with a

schedule prepared by Cassel Salpeter, as joint financial advisor.[3]  Counsel for the Debtors advised the Court of an agreement reached and nobody raised an objection.[4]

16. The Junior Lenders are now not willing to fund professional fees (even at the reduced amount).  In order to make this point abundantly clear, Shelter Island has asked the Court to reconsider the third interim Cash Collateral Order [D.E. #248] and has served a blanket objection to all Court-approved professionals.

17. In light of this re-trading by the Junior Lenders, the Committee has no reason to believe a carve-out for the unsecured creditors or a satisfactory arrangement for the payment of professional fees is realistically forthcoming.  Consequently, the Committee does not believe the Junior Lenders should be permitted to maximize their recovery through a chapter 11 sales process while professional fees are at risk and other administrative expenses are left unaddressed.

18. Pursuant to this Court's *Amended Order (1) Establishing Competitive Sale and Bid Procedures for the Sale of Substantially All of the Debtors' Assets; (II) Approving Form and Manner of Notices; (III) Scheduling Hearing Dates to Conduct Auction and to Consider Final Approval of Sale Including Treatment of Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* (the "Sale Procedures Order") dated December 16, 2010 [D.E. #213], an auction of the Debtors assets is scheduled for January 4, 2011.

19. The Committee believes the entire auction process should be suspended in favor of allowing a chapter 7 Trustee to determine the most appropriate mechanism for liquidating the Debtors' assets.  Since the Junior Lenders are unwilling to fund

---

[3] Counsel for Taglich Brothers subsequently advised that such agreement was contingent upon client approval.  Neither counsel for the Committee nor the Debtors recall any such caveat.
[4] No agreement was reached with respect to fees claimed by Garden City Group.

professional fees or make any provisions for general unsecured creditors, the Junior Lenders should not be permitted to avail themselves of the benefits of a sale under Section 363 of the Bankruptcy Code while ignoring the attendant costs.

20. For all of the foregoing reasons, it does not make economic or procedural sense to keep these cases in chapter 11 simply for the benefit of the secured creditors.

## BASIS FOR REQUESTED RELIEF

21. Section 1112(b) of the Bankruptcy code governs the conversion of chapter 11 cases to cases under chapter 7. This section provides that:

> (b) …on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant established cause.

22. Section 1112(b) further gives as an example of cause "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." Clearly, conversion to chapter 7 cases is warranted upon these facts.

## CONCLUSION

23. For all of the foregoing reasons, the Court should convert the Debtors' present chapter 11 cases to chapter 7 cases, pursuant to 11 U.S.C. §1112(b).

WHEREFORE, the Committee respectfully requests that the Court enter an order converting these cases to cases under chapter 7 of the Bankruptcy Code.

Dated: December 28, 2010

>GRAYROBINSON, P.A.
>1221 Brickell Avenue, Suite 1650
>Miami, Florida 33131
>Telephone: (305) 416-6880
>Facsimile: (305) 416-6887
>
>        /s/ Steven J. Solomon
>Robert A. Schatzman
>Florida Bar No. 0139008
>Steven J. Solomon
>Florida Bar No. 931969
>*Counsel to Official Committee of Unsecured Creditors*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by electronic mail upon all parties and counsel identified on the CM/ECF service list maintained by the Court for this case, on December 28, 2010.

>        /s/ Steven J. Solomon
>Steven J. Solomon

\7\326 - # 391009 v1